**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| --------------------------------------------------------- : <br> RYAN O'DELL, : <br> : <br>         Plaintiff, : <br> : <br> v. : <br> : <br> PING IDENTITY HOLDING CORP., : <br> MICHAEL FOSNAUGH, ROD ALIABADI, : <br> ANIL ARORA, DAVID BREACH, ANDRE : <br> DURAND, DIANE GHERSON, PAUL E. : <br> MARTIN, JOHN MCCORMACK, YANCEY : <br> L. SPRUILL, MARTIN TAYLOR, and : <br> VIKRA VERMA, : <br> : <br>         Defendants. : <br> --------------------------------------------------------- | Civil Action No. 22-cv-7770 <br><br> **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** <br><br> **JURY TRIAL DEMANDED** |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Ping Identity Holding Corp. ("Ping Identity or the "Company") and the members Ping Identity's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Ping Identity by affiliates of Thoma Bravo L.P., a private equity firm ("Thoma Bravo").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on September 6, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Project Polaris Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Project Polaris Holdings, LP ("Parent"), will merge with and into Ping Identity with Ping Identity surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 2, 2022 (the "Merger Agreement"), each Ping Identity stockholder will receive $28.50 in cash (the "Merger Consideration") for each Ping Identity share owned. Parent and Merger Sub are entities affiliated with Thoma Bravo Fund XV, L.P. ("Thoma Bravo Fund"). Parent, Merger Sub, and Thoma Bravo Fund are each affiliates of the private equity firm Thoma Bravo.

3.      As discussed below, Defendants have asked Ping Identity's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Ping Identity's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.  Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.  Plaintiff is, and has been at all relevant times, the owner of Ping Identity stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Michael Fosnaugh has served as a member of the Board since June 2016.

11. Individual Defendant Rod Aliabadi has served as a member of the Board since June 2016.

12. Individual Defendant Anil Arora has served as a member of the Board since May 2022.

13. Individual Defendant David Breach has served as a member of the Board since March 2019.

14. Individual Defendant Andre Durand has served as a member of the Board since 2016 and is the Company's founder and Chief Executive Officer.

15. Individual Defendant Diane Gherson has served as a member of the Board since March 2021.

16. Individual Defendant Paul E. Martin has served as a member of the Board since January 2021.

17. Individual Defendant John McCormack has served as a member of the Board since June 2016.

18. Individual Defendant Yancey L. Spruill has served as a member of the Board since March 2019.

19. Individual Defendant Martin Taylor has served as a member of the Board since 2020.

20. Individual Defendant Vikram Verma has served as a member of the Board since May 2022.

21. Defendant Ping Identity is a Delaware corporation and maintains its principal offices at 1001 17th Street, Suite 100, Denver, Colorado 80202.  The Company's stock trades on the New York Stock Exchange under the symbol "PONG."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. <u>**The Proposed Transaction**</u>

24. Ping Identity, doing business as Ping Identity Corporation, offers intelligent identity solutions for the enterprise in the United States and internationally. Its Ping Intelligent Identity platform provides access to cloud, mobile, Software-as-a-Service, and on-premise applications with customers, workforce, and partners. The Company's platform offers secure single sign-on; multi-factor authentication; access security; directory solution; dynamic authorization; risk management; identity verification; API intelligence; orchestration; and fraud detection. It also provides professional and customer support services. The Company sells its solutions through a direct sales force. Its customers include enterprises in Fortune 100, U.S. banks, healthcare companies, aerospace companies, auto manufacturers, and North American retailers. The Company was formerly known as Roaring Fork Holding, Inc. and changed its name to Ping Identity Holding Corp. in August 2019. Ping Identity was incorporated in 2016 and is headquartered in Denver, Colorado.

25. On August 3, 2022, the Company announced the Proposed Transaction:

> DENVER, August 3, 2022 /PRNewswire/ -- Ping Identity ( NYSE: PING), provider of the Intelligent Identity solution for the enterprise, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, for $28.50 per share in an all-cash transaction valued at an Enterprise Value of approximately $2.8 billion. The offer represents a premium of approximately 63% over Ping Identity's closing share price on August 2, 2022, the last full trading day prior to the transaction announcement, and a premium of 52% over the volume weighted average price of Ping Identity stock for the 60 days ending August 2, 2022.
>
> "This compelling transaction is a testament to Ping Identity's leading enterprise identity solutions, our talented team, and our outstanding customers and partners," said Andre Durand, Ping Identity's Chief Executive Officer. "Identity security and frictionless user experiences have become essential in the digital-first economy and

5

Ping Identity is better positioned than ever to capitalize on the growing demand from modern enterprises for robust security solutions. We are pleased to partner with Thoma Bravo, which has a strong track record of investing in high-growth cloud software security businesses and supporting companies with initiatives to turbocharge innovation and open new markets."

"A tectonic shift is occurring in intelligent identity solutions for the enterprise," said Seth Boro, a Managing Partner at Thoma Bravo. "Ping Identity's unique capabilities and strong position in enterprise identity security make it a great platform to deliver customer outcomes, expand into new use cases and support digital transformations. We are highly impressed with the talented Ping Identity team and look forward to working collaboratively in the years to come."

"Ping Identity is a leader in intelligent identity solutions for the enterprise and is well-positioned to capitalize on the significant opportunities in the $50 billion Enterprise Identity security solutions area," said Chip Virnig, a Partner at Thoma Bravo. "Our shared commitment to growth and innovation, combined with Thoma Bravo's significant security software investing and operational expertise, will enable Ping Identity to accelerate its cloud transformation and delivery of industry leading identity security experiences for the customers, employees and partners of large enterprises worldwide."

### Transaction Details

The transaction, which was unanimously approved by the Ping Identity Board of Directors, is expected to close in the fourth quarter of 2022, subject to customary closing conditions, including approval by Ping Identity shareholders and regulatory approvals. Closing of the transaction is not subject to any financing contingency. Upon completion of the transaction, Ping Identity's common stock will no longer be listed on the New York Stock Exchange and Ping Identity will become a privately held company. The Company will remain headquartered in Denver, Colorado.

Vista Equity Partners, which owns approximately 9.7% of Ping Identity's outstanding shares, has agreed to vote its shares in favor of the transaction.

"This transaction is a great outcome, and one we firmly believe maximizes value for all stakeholders," said Michael Fosnaugh, Co-Head of Vista's Flagship Fund and Senior Managing Director, and Ping Identity's Chairman of the Board. "We wish Andre and the

entire Ping Identity team continued success and thank them for their commitment and partnership over the last six years."

### Second Quarter 2022 Financial Results

In a separate press release, Ping Identity today announced financial results for its second quarter 2022. The press release is also available on the Investor Relations section of the Company's website. In light of the announced transaction with Thoma Bravo, Ping Identity has cancelled its earnings conference call as previously scheduled for August 3, 2022.

### Advisors

Goldman Sachs & Co. LLC is acting as exclusive financial advisor and Kirkland & Ellis LLP served as legal advisor to Ping Identity. Goodwin Procter LLP is serving as legal counsel to Thoma Bravo.

*  *  *

26. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Ping Identity' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

27. On September 6, 2022, Ping Identity filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28. The Proxy Statement fails to provide material information concerning financial projections by Ping Identity management and relied upon by Goldman Sachs in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts in November 2021 and June 2022 (the "Company Projections") and provided them to the Board and Goldman Sachs with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Ping Identity management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Annual Recurring Revenue, Adjusted EBIT, and Unlevered Free Cash Flows (excl. SBC) but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not

misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

33. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for Ping Identity; (ii) the inputs and assumptions underlying the range of perpetuity growth rates of 1.0% to 3.0%; (iii) the inputs and assumptions underlying the use of the range of discount rates of 11.5% to 13.5%; (iv) the Company's weighted average cost of capital; (v) Ping Identity's net debt; (vi) the net

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

present value of cash tax savings from net operating loss carryforwards and R&D credit carryforwards; and (vii) the number of fully diluted shares of Ping Identity common stock outstanding as of August 1, 202.

34. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the EV/NTM Revenue multiple range of 5.5x to 7.5x; (ii) the Company's net debt for each of the fiscal years 2022 to 2024; (iii) the range of illustrative equity values for the Company as of December 31 for each of the fiscal years 2022 to 2024; (iv) the number of projected year-end fully diluted outstanding shares of Ping Identity common stock for each of the fiscal years 2022 to 2024; (v) the range of implied future share of Ping Identity common stock prices; (vi) the inputs and assumptions underlying the illustrative discount rate of 12.9%

35. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

36. With respect to Goldman Sachs' *Premia Analysis*, the Proxy Statement fails to disclose the transactions reviewed and the premia for each transaction.

37. With respect to Goldman Sachs' *Selected Public Company Analysis*, the Proxy Statement fails to disclose the financial metrics for the companies selected for the analysis.

38. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

44. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Ping Identity within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Ping Identity, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Ping Identity, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Ping Identity, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 12, 2022                              **MELWANI & CHAN LLP**

                                                                            By:  */s/ Gloria Kui Melwani*

_____
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*
